IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) ) v. ) ) FIDEL S. HERNANDEZ ) ) | Case No. 04 CR 1023-2 Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Fidel S. Hernandez ("Hernandez") was indicted on April 21, 2005, charged with six counts of a 19-count indictment. On March 13, 2008, Hernandez pled guilty to Count One of the indictment pursuant to a written plea agreement. Count One charges that from in or about 2003 until in or about December 2004, Hernandez and other defendants conspired to possess and distribute in excess of fifty grams of a mixture or substance containing crack cocaine in violation of 21 U.S.C. § 846(a)(1). The parties did not agree as to the base offense level.

Hernandez raises several objections to the Presentence Investigation Report ("PSR"), which the parties addressed at a November 12, 2008 sentencing hearing.[1]

*Base Offense Level*

First, the PSR determines that Hernandez's base offense level is 34 because the offense involved at least 500 grams but less than 1.5 kilograms of crack cocaine. Hernandez contends he admitted his involvement in at least 50 grams but not more than 150 grams of crack cocaine; therefore, his base offense level is 30.

---

[1] Thereafter, the parties submitted written briefs.

1

To support the quantity of drugs found in the PSR, the government offered the testimony of Special Agent Mailin Chuy-Horn ("Agent Chuy-Horn"). Agent Chuy-Horn testified that she conducted a post-arrest interview of Hernandez, in the presence of his then-attorney, in which Defendant admitted to purchasing 1/4 kilogram quantities of crack cocaine on three separate occasions after April 2003. In addition, Hernandez admitted to purchasing 2 to 4-½ ounce quantities of crack cocaine once or twice a month. The government contends Hernandez's admissions to the three purchases of 1/4 kilogram quantities of crack cocaine is sufficient to establish at least 500 grams of crack cocaine, justifying an offense level of 34.

Hernandez does not dispute that if his admissions to Agent Chuy-Horn are considered, his base offense level is 34. However, Hernandez contends his statements "were the product of a bargained-for lower sentence and thus excludable under Rule 11" of the Federal Rules of Criminal Procedure and Federal Rule of Evidence 410. (Def. Br. at 3.) Fed. R. Crim P.11 (f) provides that the "admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410. Fed. R. Crim P. 11(f). Federal Rule of Evidence 410 provides:

> Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
>
> (1) a plea of guilty *which was later withdrawn*;
>
> (2) a plea of *nolo contendere*;
>
> (3) any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure or comparable state procedure *regarding either of the foregoing pleas*; or

2

> (4) any statement made in the course of plea discussions with an attorney for the prosecuting authority *which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.*

Fed. R. Evid. 410 (emphasis added).

Hernandez has not shown that Fed. R. Crim P. 11(f) and Fed. Rule of Evidence 410 apply. As shown above, Fed. R. Evid. 410 applies to statements made in the course of plea discussions when there has been "a plea of guilty later withdrawn" or "a plea of *nolo contendere.*" Here, Hernandez pled guilty, and his plea was not withdrawn. Therefore, Fed. R. Evid. 410 does not apply by its terms. Further, the Advisory Committee's Note to Rule 1101 of the Federal Rules of Evidence[2] states that "[t]he rules of evidence have not been regarded as applicable to sentencing or probation proceedings, where great reliance is place upon the presentence investigation and report." Fed. R. Evid. 1101 advisory committee's note. The cases cited by Hernandez in support of his argument all involve the issue of the admissability of prior guilty pleas or plea discussions during trial and not for purposes of sentencing after a guilty plea such as Hernandez argues here.

Moreover, the federal sentencing guidelines allow for consideration of the evidence at issue for purposes of sentencing, even if the evidence would not be admissible at trial. *See* U.S.S.G. § 6A1.3(a) ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial.")

---

[2]Rule 1101 is entitled "Applicability of Rules."

3

Accordingly, Hernandez's admissions to Agent Chuy-Horn, in the presence of his then-counsel, are properly considered and are sufficient to establish that his offense involved at least 500 grams but less than 1.5 kilograms of crack cocaine. Therefore, Hernandez's base offense level is 34.

*Two Point Enhancement for Possession of Dangerous Weapon*

The PSR increased the base offense level by 2 points under U.S.S.G. § 2D1.1(b)(1) because Hernandez possessed a dangerous weapon during the course of the criminal conduct alleged. Hernandez objects to this enhancement.

"Under the sentencing guidelines, if a dangerous weapon (including a firearm) was possessed during the commission of an offense involving drugs, the defendant's base offense level must be increased by two levels." *US v. Berthiaume*, 233 F.3d 1000, 1004 (7th Cir. 2000). "The government bears the burden of proving by a preponderance of the evidence that the gun was possessed during the commission of the offense or relevant conduct. But, the government does not have to prove that the gun was connected to the offense. If the government satisfies its burden, the burden shifts to the defendant to show that it was clearly improbable that the gun was connected to the offense." *Id.*

Agent Chuy-Horn testified that the FBI was aware, based on intercepted phone calls and source information, that Hernandez and co-defendant Janet Rosado were traveling to Cicero, Illinois, to deliver crack cocaine to a co-conspirator. Based on this information, law enforcement conducted a traffic stop; at which time, approximately 7/8th ounce of crack cocaine was recovered on Rosado. Hernandez asked the arresting officers if he could secure the release of Rosado by producing two handguns to law

4

enforcement officers. The officers agreed that Rosado would not be arrested at that time if Defendant could produce two handguns. Defendant contacted co-defendant Daniel Fleitas, and two firearms were subsequently turned over to police.

In addition, Agent Chuy-Horn testified that during a series of intercepted phone calls, Hernandez directed co-defendant Jorge Campos to bring him a gun.

The government's evidence is sufficient to show that a gun was possessed during the commission of the offense or relevant conduct. Hernandez has not shown that it was clearly improbable that the gun was connected to the offense. Thus, a two-point enhancement is warranted under § 2D1.1(b)(1).

Hernandez cites the Supreme Court's opinion in *Watson v. US*, 128 S.Ct. 579 (2007) (*Watson*). *Watson* is not applicable. *Watson* dealt with whether a person who trades drugs for a gun "uses" a firearm during and in relation to a drug-trafficking crime for purposes of applying the mandatory minimum sentence under 18 U.S.C. § 924(c)(1)(A). Hernandez did not trade drugs for a gun, and the issue here is whether Hernandez possessed a firearm for purposes of the two-level enhancement under U.S.S.G. § 2D1.1(b)(1), not an application of the mandatory minimum sentence under 18 U.S.C. § 924(c)(1)(A).

*Three-Level Increase as a Leader, Organizer, Manager or Supervisor*

Hernandez next objects to the PSR's three-level increase in his offense conduct pursuant to U.S.S.G. § 3B1.1(b) on the ground that he was a leader, organizer, manager or supervisor and the criminal activity involved five or more participants.

5

The government relies on the plea agreement of co-defendant Jorge Campos to show that Defendant "directed" Campos as to how to bag up crack cocaine that would later be sold in Cicero, Illinois. The government argues that Campos's plea agreement, showing Hernandez's "direction of Campos, coupled with Hernandez's role in the gang [*i.e.*, that Hernandez had a leadership position in the gang], and the scope of the criminal activity, justifies a three-level increase." (Gov. Br. at 5.) Hernandez contends a three-level enhancement under § 3B1.1(b) is not warranted because his position of leadership in the gang does not mean that he was a leader with respect to the criminal conduct of gang members.

Campos's plea agreement describes Hernandez as the "Don" of the Maniac Latin Disciples gang (MLD), which is the highest ranking position of the MLD. The agreement describes Hernandez as expressing a need for unity among MLD members so that the gang would be better able to take care of its members and "have better sources of drugs and handguns." The agreement also describes Hernandez as being very involved in the supply of drugs and handguns to MLDs. Hernandez offered to supply Campos with a source of cocaine. He also offered to supply Campos and others with handguns. Sometimes, Hernandez would "arrange deals" for Campos so that Campos could sell crack and then pay Hernandez back because Hernandez had fronted the crack. Other times, Hernandez wanted Campos to bag up crack cocaine for Hernandez to resell. Hernandez would instruct Campos to bag the crack that was being sold in Cicero, Illinois, at 2.5 grams, as opposed to the weight of 3.5 grams, the amount which was supposedly being sold. (Campos Plea Agreement.)

These facts are sufficient to support a three-point enhancement. Hernandez was not, as he suggests, merely a leader of the gang; the plea agreement shows that he exerted some level of control and influence over at least one other participant, Campos, and that he held a leadership position in a gang that was primarily concerned with dealing illegal drugs. *See United States v. Mustread*, 42 F.3d 1097, 1103 (7th Cir. 1994) ("we have recognized that a key inquiry, though not the only inquiry, is whether the defendant exercised some control over at least one other participant); *see also United States v. Hankton*, 432 F.3d 779, 795 (7th Cir. 2005) ("because Hankton was a leader of the MCs, and because the gang was primarily concerned with dealing illegal drugs, it was entirely reasonable and logical for the sentencing judge to infer that Hankton's role as leader of the gang was related to his distribution of crack cocaine.") The enhancement is warranted here.

*Two Level Increase for Obstruction of Justice*

Hernandez next objects to the PSR's finding of a two-level increase in his offense level for obstruction of justice under U.S.S.G. § 3C1.1.

The government contends the two-level enhancement is warranted based on Hernandez's flight from the jurisdiction. Agent Chuy-Horn explained that after Hernandez was arrested, he was approached by agents and agreed to cooperate with the FBI to further its investigation. Hernandez was presented with and signed a waiver of an initial appearance in his counsel's presence, stating that he "underst[ood] that in the future a complaint, information, or indictment" would be filed against him charging him with a violation of federal criminal law and that he would be prosecuted for that violation.

7

Agent Chuy-Horn stated, however, that Hernandez stopped providing information and ceased contact with the FBI. When Agent Chuy-Horn attempted to find Hernandez, she was told that he had left the area. Hernandez went to Florida, where he remained until he was arrested by authorities.

Hernandez disputes that his conduct constitutes obstruction of justice because at the time he left the jurisdiction, "he was under no condition of court-order release. He had no agreement with the prosecution, probation or the district court barring his travel to another state." (Def. Br. at 9.) However, the Court agrees with the government that Hernandez's conduct constitutes the kind of "calculated and deliberate plan to evade the authorities where an indictment was imminent." Thus, this conduct warrants a two-level enhancement under § 3C1.1. *See United States v. Porter*, 145 F.3d 897, 904 (7th Cir. 1998).

*Acceptance of Responsibility*

Finally, Hernandez argues that he is entitled to three-level decrease for acceptance of responsibility. The PSR does not award Hernandez such a reduction. The sentencing guidelines allow a federal court to reduce a defendant's drug offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense. . . ." U.S.S.G. § 3E1.1. However, application note 4 to § 3E1.1 provides:

> Conduct resulting in an enhancement under § 3C1.1 ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may be, however, extraordinary cases in which adjustment under both §§ 3C1.1. and 3E1.1 may apply.

Hernandez asserts that following his September 10, 2004 arrest, "he confessed to

8

the crime, cooperated and assisted law enforcement in connection with the then pending criminal prosecution of his numerous co-defendants. He also plead guilty." (Def. Br. at 9.) However, considering Hernandez's conduct in this regard in its entirety as discussed above, he has not shown that this is an extraordinary case warranting an adjustment under both §§ 3C1.1 and 3E1.1. Hernandez is not entitled to an adjustment for acceptance of responsibility.

Date: January 21, 2009

JOHN W. DARRAH
United States District Court Judge